UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

BUFFALO TRANSPORTATION, INC.,

      Plaintiff,

  v.                                    16-CV-1032
                                         DECISION AND ORDER
FREZER BEZU d/b/a BUFFALO MD
TRANSPORTATION,

      Defendants.

---

On December 22, 2016, the plaintiff, Buffalo Transportation, Inc., ("Buffalo Transportation"), filed a complaint alleging unfair competition under § 43 of the Lanham Act, 15 U.S.C. § 1125; trademark infringement under New York common law; unfair competition under New York common law; trademark dilution under New York General Business Law § 360-l; deceptive business practices under New York General Business Law § 349; and use of name with intent to deceive under New York General Business Law § 133. Docket Item 1. The defendant failed to appear and defend this action, and the time to do so expired. As a result, the plaintiff asked the Clerk of Court to enter a default, Docket Item 8, which the Clerk entered accordingly on June 9, 2017, Docket Item 9. Now before this Court is the plaintiff's motion for default judgment pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure. After reviewing the plaintiff's supporting papers and the applicable law, this Court GRANTS the plaintiff's motion.

**BACKGROUND**

The complaint tells the following story.[1] Buffalo Transportation provides medical transportation services throughout Western New York. Docket Item 1 at 3. It is a registered transportation provider for the New York State Department of Health and Medical Answering Services, LLC, an agent of the New York State Department of Health. *Id.* at 4. Through Medical Answering Services, customers can request transportation services in connection with medical treatment, and costs are billed directly to the customer's Medicare, Medicaid, or other health insurance. *Id.*

Buffalo Transportation applied with the United States Patent and Trademark Office to register the word mark "BUFFALO TRANSPORTATION" and a corresponding design mark (together, the "Buffalo Transportation Marks"). *Id.* at 3. Buffalo Transportation has used the Buffalo Transportation Marks for over thirteen years in its advertising as well as on its vehicles, so that the Buffalo Transportation Marks have come to represent Buffalo Transportation's high quality and affordable medical transportation services. *Id.* at 3-4. In fact, the marks and services have become so distinctive that customers requesting its services request them by its word mark, "Buffalo Transportation." *Id.* at 4.

The defendant also provides medical transportation services to consumers in Western New York, under the name "Buffalo MD Transportation." *Id.* at 4. Frezer Bezu is an individual who runs this entity and who filed a fictitious name certificate with the Erie County Clerk's Office on January 27, 2016. *Id.* at 5. The defendant uses

---

[1] On a motion for default judgment, the factual allegations in the complaint are accepted as true. *See Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981).

substantially similar word and design marks to Buffalo Transportation and provides identical services in connection with those marks.  *Id.* at 5.  The defendant's word and design marks, like the Buffalo Transportation Marks, are a white oval with red border trim, the word "Buffalo" across the top of the oval, "Transportation" across the bottom of the oval, and a stylized graphic of a buffalo in the middle.  *Id.* at 6.  The text fonts are similar, and the only difference is the abbreviation "MD," a phone number, and the choice of buffalo graphic.  *Id.*  Similarities between the marks are likely to cause confusion.  *Id.*

In fact, they already have.  *Id.*  The defendant's services are closely related to Buffalo Transportation's services.  The defendant also is a registered transportation provider for the New York State Department of Health and its agent, Medical Answering Services.  *Id.*  Medical Answering Services has dispatched the defendant's vehicle when a customer called to request Buffalo Transportation's services.  *Id.*  A customer entered one of the defendant's vehicles thinking it belonged to Buffalo Transportation and was taken to the wrong location.  *Id.* at 6.  Another confused patient took a ride in one of the defendant's vehicles thinking it belonged to Buffalo Transportation, only to find that the driver demanded to be paid directly rather than by a third-party healthcare institution.  *Id.*

Buffalo Transportation therefore brought this suit seeking declaratory relief that the defendant is illegally infringing its trademark; injunctions preventing further infringement; and money damages, including lost profits, treble damages, attorney's fees, expenses, and costs.

**DISCUSSION**

I.  **DEFAULT JUDGMENT**

To obtain a default judgment, a party must secure a clerk's entry of default by demonstrating, "by affidavit or otherwise," that the opposing party "has failed to plead or otherwise defend" the case. Fed. R. Civ. P. 55(a). The clerk's entry of default does not mean that a default judgment is warranted automatically. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). But it does mean that the court accepts as true the complaint's factual allegations, except those relating to damages, and draws all reasonable inferences in the moving party's favor. *See Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009).

"[T]he court may, on [the] plaintiff['s] motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers*, 779 F.3d at 187. As to injunctive relief, "[a] court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *Commscope, Inc. of North Carolina v. Commscope (U.S.A.) Intern. Group Co., Ltd.*, 809 F. Supp. 2d 33 (N.D.N.Y. 2011) (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, 2007 WL 3287368, at *5 (S.D.N.Y. Nov 7, 2007). To satisfy the second condition, a party seeking an injunction must demonstrate "irreparable harm and the absence of an adequate remedy at law." *Id.* (quoting *Kingvision Pay-Per-View Ltd. v. Laleo*, 429 F. Supp. 2d 506, 516 (E.D.N.Y. 2006). As to damages, the court should take steps, including by hearing, or by referral

when necessary, to establish their proper amount with reasonable certainty. *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997).

## II. LIABILITY

### A. Federal Trademark Infringement and Unfair Competition Claims

Buffalo Transportation alleges that the defendant has engaged in unfair competition under 15 U.S.C. § 1125(a). Docket Item 1 at 3. To succeed on this claim, the plaintiff "must show that it has a valid mark that is entitled to protection under the Lanham Act and that [the defendant's] actions are likely to cause confusion with [the plaintiff's] mark." *The Sports Auth., Inc. v. Prime Hospitality Corp.*, 89 F.3d 955, 960 (2d Cir. 1996); *see also Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004) (analyzing the plaintiff's claims of imitation of registered mark, 15 U.S.C. § 1114, and false designation of origin, *id.* § 1125(a), under the same legal standard). 15 U.S.C. § 1125(a) "protects qualifying unregistered trademarks." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

Buffalo Transportation has alleged facts that satisfy both prongs. First, Buffalo Transportation has shown that the Buffalo Transportation Marks are "protectable trademark[s]," that it has used and sought to register, and that it has developed substantial goodwill around them. Docket Item 1 at 3-6. It has "utilized the [Buffalo Transportation] Marks in its advertising, as well as on its vehicles, which number over 200 cars, trucks, and vans" for over thirteen years. *Id.* at 3. And the marks have "come to represent the high quality affordable transportation services" Buffalo Transportation

provides.  *Id.* at 4.  All these facts establish that the marks are valid and entitled to protection.  *See The Sports Authority, Inc.*, 89 F.3d at 960.

Buffalo Transportation also has shown the likelihood of confusion.[2]  The defendant is using "said fictitious name in commerce through the advertisements emblazed on Defendant's vehicles, and through its promotion on the internet."  Docket Item 1 at 5.  That "false designation is likely to cause continued confusion," *id.* at 6, something especially likely here because the defendant provides similar services in the same area where the services are offered by Buffalo Transportation.  *Id.* at 4.  The defendant uses a mark that displays nearly the same words, in the same font and orientation, with a similar graphic.  *Id.* at 6.  Buffalo Transportation alleges that the defendant chose its infringing mark knowingly and willfully with the intent to deceive consumers in the marketplace and to trade off the valuable goodwill of the Buffalo Transportation Marks.  *Id.* at 7.  Consumers are getting and will continue to get the false impression that the defendant's services originate from Buffalo Transportation.  *Id.*  For all these reasons, the plaintiff has plausibly pleaded a likelihood of confusion between the parties' marks.  *See Polaroid Corp.*, 287 F.2d at 495.  Taking the undisputed facts in

---

[2] To determine whether a mark is likely to cause confusion among consumers, courts generally rely upon the eight-factor balancing test enumerated in *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir. 1961).  These factors include (1) the strength of the plaintiff's mark; (2) the degree of similarity between the two marks; (3) the competitive proximity of the products or services; (4) the existence of actual confusion; (5) the likelihood that the plaintiff will 'bridge the gap' between the two markets; (6) the defendant's good faith in adopting its mark; (7) the quality of the defendant's product; and (8) the sophistication of the purchasers.  *Id.*  The second, third, fourth, and sixth factors clearly weigh in favor of the plaintiff's claim here, and the others may well do so, too.

the plaintiff's complaint as true suffices to establish the defendant's liability under the Lanham Act.

### B. Common Law Trademark Infringement and Unfair Competition

Buffalo Transportation also claims that the defendant has violated the New York common law on trademark infringement and unfair competition. *Id.* at 10-11. There is little difference between these claims and those brought under the Lanham Act. "Courts employ substantially similar standards when analyzing claims for trademark infringement and unfair competition under the Lanham Act, 15 U.S.C. § 1114(1)(a); false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a); trademark infringement under New York common law; and unfair competition under New York common law." *Mitsubishi Motors North America Inc. v. Grand Automotive, Inc.*, 2018 WL 2012875, at *9 n.9 (E.D.N.Y. April 30, 2018); *see also Lorillard Tobacco Co. v. Jamelis Grocery, Inc.*, 378 F. Supp. 2d 448, 456 (S.D.N.Y. 2005) ("It is well-established that the elements necessary to prevail on causes of action for trademark infringement and unfair competition under New York common law mirror the Lanham Act claims."). Because Buffalo Transportation has alleged facts sufficient to establish the defendant's liability under the Lanham Act,[3] and because the standards under New York common law mirror those under the Lanham Act, the plaintiff has sufficiently alleged facts to establish the defendant's liability under New York common law for trademark infringement and unfair competition.

---

[3] Although Buffalo Transportation brings claims only for unfair competition under 15 U.S.C. § 1125(a) and not trademark infringement, the legal standards are the same, *see Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 129 (2d Cir. 2004), and either serves to establish parallel liability under New York common law.

7

### C. Trademark Dilution under N.Y. GEN. BUS. LAW § 360-*l*

Buffalo Transportation also asserts a claim under Section 360-*l* of New York's General Business Law, entitling a plaintiff to injunctive relief when there is a "[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services." N.Y. Gen. Bus. Law § 360-*l*. To prevail on a claim under that section, "a plaintiff must prove that (1) its mark possesses a distinctive quality capable of dilution, and (2) there is a likelihood of such dilution." *CommScope, Inc.*, 809 F. Supp. 2d 33 at 39 (quotations omitted). "Distinctiveness, in this context, is measured by the 'strength of a mark for infringement purposes.'" *Lyons P'Ship, L.P. v. D& L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 116 (E.D.N.Y. 2010) (quoting *Johnson & Johnson Consumer Cos., Inc. v.* Aini, 540 F. Supp. 2d 374, 394 (E.D.N.Y. 2008). And dilution is "either the blurring of a mark's product identification or the tarnishment of the affirmative associations a mark has come to convey." *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 42-43 (2d Cir. 1994).

The plaintiff has alleged the distinctive quality of the Buffalo Transportation Marks. Buffalo Transportation uses its marks on over 200 vehicles to identify its transportation services to patients and customers. Docket Item 1 at 3. The plaintiff further alleges that the defendant uses the nearly identical phrase "Buffalo MD Transportation" on a substantially similar logo in connection with nearly identical services and that the similarity of both the defendant's word and design marks have caused actual confusion. *Id.* at 5-6.

These allegations plausibly suggest that the defendant's use of the infringing marks to market its services has diluted the plaintiff's business name and reputation.

8

*See CommScope, Inc.*, 809 F. Supp. 2d at 39 (finding that the plaintiffs established liability in motion for default judgment when the defendant used the word "Commscope" in its corporate name and licensed it to third parties, which was likely to injure the business name and reputation of plaintiff's mark, "CommScope."). The plaintiff has shown dilution for the same reasons noted above: the defendant's marks use the same two words as the plaintiff's; the logos differ by only two letters and the buffalo graphic; and the parties engage in the same type of business. Accordingly, the defendant is liable for injury to business reputation and dilution under § 360-*l* of New York General Business Law.

### D. Deceptive Business Practices under N.Y. GEN. BUS. LAW § 349

Buffalo Transportation also brings a claim for unfair business practices under Section 349 of New York General Business Law. That section proscribes "[d]eceptive acts and practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York. "A party challenging an act or practice under Section 349 must show that (1) defendant engaged in a consumer-oriented act, (2) that the consumer-oriented act was misleading in a material way, and (3) that plaintiff consequently suffered injury." *CommScope, Inc.*, 809 F. Supp. 2d at 39 (quotations omitted).

Buffalo Transportation has alleged facts plausibly suggesting that the defendant intended its infringing marks to be confusingly similar to the Buffalo Transportation Marks. The defendant's acts were "directed at consumers by way of their advertisements on their vehicles as well as their online promotion." Docket Item 1 at 10. That was materially misleading because it had the potential to, and in fact did, confuse

9

customers into getting the defendant's services when they wanted Buffalo Transportation's services. *Id.* And Buffalo Transportation suffered harm to its reputation and public goodwill, as well as lost revenue. *Id.* Therefore, the defendant is liable for unfair business practices under § 349 of New York General Business Law.

### E. Use of Name with Intent to Deceive under N.Y. GEN. BUS. LAW § 133

Finally, Buffalo Transportation brings a claim for use of a name with intent to deceive under § 133 of New York General Business Law. That section makes it illegal for a "person, firm or corporation . . . with intent to deceive or mislead the public . . . [to] use as, or as part of, a corporate, assumed or trade name, . . . for the purposes of trade . . . any name, designation or style . . . which may deceive or mislead the public as to the identity of such person . . . ." N.Y. Gen. Bus. § 133. It "protects tradenames from unlawful infringement by prohibiting the use of someone else's name, style or symbol as part of one's own name with an intent to deceive the public." *Sovereign Bus. Forms, Inc. v. Stenrite Indus., Inc.*, 2000 WL 1772599, at *12 (S.D.N.Y. Nov. 28, 2011). To establish a claim under § 133, a plaintiff must show that the defendant used the plaintiff's name or symbol as part of the defendant's trade name for purposes of advertising with an intent to deceive. *See U-Neek, Inc. v. Wal-Mart Stores, Inc.*, 147 F. Supp. 2d 158, 176 (S.D.N.Y. 2001).

Buffalo Transportation has alleged that the defendant used its name, "Buffalo Transportation" as a part of the defendant's trade name, "Buffalo MD Transportation." Docket Item 1 at 11. The plaintiff also alleges that the defendant did so "with the intent to deceive and mislead the public," *id.*, and "to trade off the valuable goodwill of Plaintiff's Marks and reputation," *id.* at 12. Taking the allegations in the complaint as

10

true, then, the defendant is liable for using Buffalo Transportation's name with the intent to deceive under N.Y. Gen. Bus. L. § 133.

For all those reasons, pursuant to Fed. R. Civ. P. 55(b), the Court GRANTS the plaintiff's motion for a default judgment on the issue of liability with regard to all five of its claims.

### III. REQUESTED RELIEF

The plaintiff seeks both legal and equitable relief. Buffalo Transportation asks that the defendant be permanently enjoined from any further use of confusingly similar word and design marks. Docket Item 1 at 15. It asks that the defendant be required to file an accounting of all revenues, income, profit, or any other pecuniary gain obtained in connection with the use of the infringing marks. *Id.* Finally, it seeks an award of damages sustained as a result of the defendant's infringement; trebled damages; disgorgement of all profits received by the defendant as a result of its infringing actions; and its attorney's fees and costs. *Id.*

#### 1. Injunctive Relief

"A Court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute, and (2) it meets the prerequisites for the issuance of an injunction." *CommScope, Inc.*, 809 F. Supp. 2d at 41 (quoting *Pitbull Prods., Inc. v. Univ. Netmedia, Inc.*, 2007 WL 3287368, at *5 (S.D.N.Y. Nov. 7, 2007)).

The Lanham Act entitles Buffalo Transportation to each form of injunctive relief that it requests. The act vests courts with the "power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, . . . to

prevent a violation under subsection (a), (c), or (d) of section 1125 of this title." 15 U.S.C. § 1116(a). A court therefore has the power to enjoin a defendant from engaging in further acts of trademark infringement and unfair competition and to direct the destruction of all infringing materials. *See, e.g.*, *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 151 (E.D.N.Y. 2010) (directing the defendants to "destroy or to surrender to Plaintiff any and all materials . . . wherein . . . Rolls-Royce Marks may appear.").

But before Buffalo Transportation can actually obtain such relief, it must demonstrate the prerequisites for an injunction: irreparable harm and the absence of an adequate remedy at law. *See Kingvision Pay-Per-View Ltd.*, 429 F. Supp. 2d at 516. It has done so here.

"In trademark disputes, a showing of likelihood of confusion establishes . . . irreparable harm." *Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 537 (2d Cir. 2005) (internal quotation marks omitted). Accepting Buffalo Transportation's allegations as true—particularly as they relate to the likelihood of confusion and the allegation that people actually confuse Buffalo Transportation's services with the defendant's services—the Court finds that the plaintiff indeed "has alleged likelihood of confusion and thus also established irreparable injury." *Commscope, Inc.*, 809 F. Supp. 2d at 41 (citing *Pitbull Prods., Inc.*, 2007 WL 3287368, at *6).

The final inquiry is whether Buffalo Transportation has an adequate remedy at law. "[I]n cases where confusion about the origin of goods or services leads to damage to reputation or loss of a potential relationship with a client that 'would produce an

12

indeterminate amount of business in years to come[,]' monetary damages are difficult to establish and are unlikely to present an adequate remedy at law." *Century 21 Real Estate LLC v. Bercosa Corp.*, 666 F. Supp. 2d 274, 296 (E.D.N.Y. 2009) (quoting *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 404 (2d Cir. 2004). Furthermore, there is no adequate remedy at law when the defendant's infringing conduct is likely to continue without an injunction. *See Chanel, Inc. v. Sea Hero*, 234 F. Supp. 3d 1255, 1262 (S.D. Fla. 2016) ("Plaintiff has no adequate remedy at law so long as Defendants continue to operate the Seller IDs because Plaintiff cannot control the quality of what appears to be its products in the marketplace."); *Commscope, Inc.*, 809 F. Supp. 2d at 41-42 (finding no adequate remedy at law where the defendant would continue to use a name that was confusingly similar to a protected trademark absent an injunction). Buffalo Transportation has alleged that the defendant's acts have "caused, and unless restrained and enjoined, will continue to cause a likelihood that consumers will be confused about the source of the services. . . [and] Plaintiff has no adequate remedy at law." Docket Item 1 at 13. The defendant has not appeared, nor has the defendant indicated any intent to cease using the infringing marks or names. Accepting the complaint's allegations as true, this Court finds that Buffalo Transportation has no adequate remedy at law.

Because Buffalo Transportation has shown irreparable harm and the absence of any adequate remedy at law, it meets the prerequisites for a permanent injunction.

## 2. Damages

Buffalo Transportation also seeks a monetary award for "damages and all of Defendant's profits, revenues, income, or any other pecuniary gain"—trebled. Docket Item 1 at 15.

15 U.S.C. § 1117 entitles a plaintiff who has established "a violation under section 1125(a) . . . to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117. In the Second Circuit, "a finding of defendant's willful deceptiveness is a prerequisite for awarding profits" under the Lanham Act. *George Basch Co. v. Blue Coral, Inc.*, 968 F.2d 1532, 1537 (2d Cir. 1992); *see also Pedinol Pharmacal, Inc. v. Rising Pharm., Inc.*, 570 F. Supp. 2d 498, 502 (E.D.N.Y. 2008) (discussing "[t]he continuing viability of the wilfulness requirement set forth in *Basch*"). But "many courts in [the Second Circuit] treat a default as evidence of willfulness." *Sream, Inc. v. Khan Gift Shop, Inc.*, 2016 WL 1130610, at *5 (S.D.N.Y. Feb. 23, 2016) (quoting *Rolls-Royce PLC*, 688 F. Supp. 2d at 157). This Court does that here.[4]

Before granting a default judgment for a specific amount of damages, the court should take steps, including by hearing or referral if necessary, to find the appropriate

---

[4] Courts finding that default establishes willfulness often do so when the complaint alleges the defendant's willfulness. *See, e.g.*, Complaint at 6, *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150, 157 (E.D.N.Y. 2010) (No. 09-1381) ("Defendant adopted Plaintiffs' Rolls-Royce Marks in its corporate and business title and trade marks *for the purpose of deceiving, misleading and confusing* the public . . . .") (emphasis added). Here, Buffalo Transportation alleges that the "[d]efendant is knowingly and willingly continuing its unauthorized use of a confusingly similar name and design mark to intentionally deceive consumers in the marketplace and to trade off the valuable goodwill of Plaintiff's Marks and reputation." Docket Item 1 at 12. The Court accepts this allegation as true, and therefore Buffalo Transportation has alleged enough to meet the willfulness standard and seek profits and damages.

amount to award with reasonable certainty. In fact, 15 U.S.C. § 1117 provides that "[t]he court shall assess such profits and damages or cause the same to be assessed under its direction." 15 U.S.C. § 1117; *see also Transatlantic Marine Claims Agency, Inc.*, 109 F.3d at 111. "Although the default establishes a defendant's liability, unless the amount of damages is certain, the court is required to make an independent determination of the sum to be awarded." *Griffiths v. Francillon*, 2012 WL 1341077, at *1 (E.D.N.Y. Jan. 30, 2012).

This Court has no information upon which to base an award of damages and therefore cannot determine the damage award to include in a judgment. The Court therefore refers the case to United States Magistrate Judge Hugh B. Scott to issue a report and recommendation to this Court on the amount of damages, and Buffalo Transportation is invited to present proof to Judge Scott on the damage that it has suffered. In that regard, the defendant is ordered to account for all profits derived from actions infringing the Buffalo Transportation Marks and to render an accounting before Judge Scott.

### 3. Attorney's Fees and Costs

Buffalo Transportation also seeks an award of attorney's fees and costs. Docket Item 1 at 15. 15 U.S.C. § 1117 provides that "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party." These exceptional cases exist only when there is "evidence of fraud or bad faith." *Gordon & Breach Sci. Publishers S.A. v. Am. Inst. of Physics*, 166 F.3d 438, 439 (2d Cir. 1999) (quoting *Twin Peaks Prods., Inc.*, 996 F.2d at 1383). But when a plaintiff pleads the necessary facts for willful infringement and the defendant defaults, the "defendant's violations are deemed

willful and thus constitute exceptional circumstances." *Prot. One Alarm Monitoring, Inc. v. Exec. Prot. One Sec. Serv., LLC.*, 553 F. Supp. 2d 201, 208 (E.D.N.Y. 2008) (awarding attorney's fees to trademark plaintiff). Therefore, Buffalo Transportation has shown that it may well be entitled to an award of attorney's fees and costs.

"In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent, and work done." *Prot. One Alarm Monitoring, Inc*, 553 F. Supp. 2d at 208 n.1 (citing *New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147–48 (2d Cir.1983)). Buffalo Transportation has not yet submitted any such records to support an award of attorney's fees. Therefore, the plaintiff's counsel should submit an application for costs and attorney's fees to Judge Scott for inclusion in his report and recommendation, explaining why this case is exceptional and including records supporting its application.

**CONCLUSION**

In light of the above, this Court finds, and GRANTS a declaratory judgement, that the defendant, Frezer Bezu, doing business as Buffalo MD Transportation, has violated 15 U.S.C. § 1125(a), N.Y. GEN. BUS. LAW § 360-*l*, N.Y. GEN. BUS. LAW § 349, and N.Y. GEN. BUS. LAW § 133 and committed common law trademark infringement and unfair competition; and it is therefore

ORDERED that the defendant and any officers, agents, servants, employees, attorneys, parents, successors, assigns, affiliates, and all others acting in concert or participating with him be and hereby are permanently enjoined and restrained from further acts infringing upon plaintiff Buffalo Transportation's word and design marks by using names or marks confusingly similar thereto or otherwise infringing upon the Buffalo Transportation Marks; and it is further

ORDERED that the defendant shall render an accounting, pursuant to 15 U.S.C. § 1117, of all profits derived from sales of any kind made as a result of its infringing actions and to provide that accounting to the plaintiff, and to Judge Scott; and it is further

ORDERED that Buffalo Transportation shall offer proof of any damages, attorney's fees, and costs claimed in connection with this matter before Judge Scott.

SO ORDERED.

Dated: March 22, 2019
Buffalo, New York

*s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE